UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CARL PALADINO,
10 ELLICOTT SQUARE COURT CORPORATION
d/b/a ELLICOTT DEVELOPMENT CO.,

                                    Plaintiff,          Civil Action No.:_____

vs.                                                     **COMPLAINT**
                                                        Jury Trial Demanded

KEVIN P. BRUERN,
IN HIS OFFICIAL CAPACITY SUPERINTENDENT
OF THE NEW YORK STATE POLICE,
JOHN C. GARCIA, IN HIS OFFICIAL CAPACITY
SHERIFF OF ERIE COUNTY,
JOHN GRAMAGLIA , IN HIS OFFICIAL CAPACITY
BUFFALO POLICE HEADQUARTERS,

                                    Defendant.

---

The above-captioned Plaintiffs ("Plaintiffs"), on their own behalf and on behalf of all
similarly situated New Yorkers, by and through the undersigned attorneys, file this
Complaint against the above-captioned Defendants ("Defendants"), in their official
capacities as state and local officials responsible under the law of the State of New
York ("New York" or "State") for enforcing the State's laws and regulations governing
the public carrying of firearms. Plaintiffs seek declaratory and injunctive relief in
relation to Section 5 of Chapter 371 of the Laws of New York 2022 ("Section 5"), which
is codified at N.Y. Penal Law § 265.01-d.

       Section 5 is one of the most expansive infringements on the constitutional right
to bear arms for self-defense ever adopted by a state legislature.  Section 5 acts to
preclude <u>all</u> law-abiding New Yorkers from carrying <u>any</u> firearm, regardless of

whether such a firearm is carried concealed <u>or</u> openly, on <u>all</u> private property in New York State without the prior permission of the owner or lessee of each property.

Plaintiffs seek a declaration that Section 5's prohibition against Handgun Carry Licensees[1] from carrying their concealed handguns on private property without the prior permission of such property's owner/lessee is unconstitutional under the First, Second, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiffs also seek an injunction restraining Defendants from enforcing Section 5 against Handgun Carry Licensees carrying concealed handguns.

In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

<u>**INTRODUCTION**</u>

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II.  This amendment guarantees the People the right to "carry weapons in case of confrontation" for the "lawful purpose of self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 592, 630 (2008)

2.      In *New York State Rifle & Pistol Assn., Inc. v. Bruen* ("*Bruen*"), the Supreme Court reaffirmed this constitutional right to self-defense.  A true and accurate copy of the Supreme Court's June 23, 2022, Slip Opinion in *Bruen* is attached hereto as **Exhibit A**.

---

[1] This term is defined at ¶ 23, *infra*.

3.      In *Bruen*, the Supreme Court specifically held that "ordinary, law-abiding citizens have a . . . right to carry handguns publicly for self-defense." Slip Opinion at p.1.

4.      The Supreme Court also held that "[t]he constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Id.* at p.62.

5.      In defiance of the constitutional guarantee to armed self-defense provided by the Second Amendment, New York recently adopted Penal Law 265.01-d. See N.Y. L 2022, ch 371, § 5. A true and accurate copy of Chapter 371 of the New York Laws of 2022 ("Chapter 371") is attached here to as **Exhibit B**. A true and accurate of the Sponsor's Memorandum of the bill which became Chapter 371 is attached hereto as **Exhibit C**.

6.      While Chapter 371 is replete with provisions that unconstitutionally infringe on New Yorkers' Second Amendment rights, this lawsuit specifically challenges Section 5 of Chapter 371, which constitutes the grossest infringement on the right to self-defense among the many infringements contained in Chapter 371.

7.      Specifically, Section 5 unconstitutionally presumptively prohibits Handgun Carry Licensees from carrying a concealed handgun on all private property in the State.

8.      In effect, Section 5 limits New Yorkers' constitutional right to armed self-defense so that this right is only effective when New Yorkers are on their own property or certain public properties (roads, sidewalks, etc.).

## JURISDICTION AND VENUE

9.     This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331,1343, 2202.

10.    Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202; 42 U.S.C. §§ 1983 and 1988; and/or Rules 57 and 65 of the Federal Rules of Civil Procedure.

11.    This suit is authorized by law to redress deprivations under color of state law of rights, privileges, and immunities secured by the First, Second, Fifth and Fourteenth Amendments to the United States Constitution, and for declaratory and injunctive relief in relation to the same.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and/or (c) as, as the various acts complained will occur, and various Plaintiffs and Defendants are located, within the Western District of New York.

## PARTIES

13.    Plaintiff Carl Paladino ("Paladino) is a citizen of the United States and a resident and citizen of the State of New York, with a residence at 272 Potters Road, Buffalo, New York, 14220.

14.    Paladino is the holder of New York State Handgun Carry License issued pursuant to New York law.

15.     Paladino wishes and intends to lawfully carry a concealed firearm on private property in New York State, and would do so, if Section 5 had not been enacted.

16.     Plaintiff 10 Ellicott Square Court Corporation d/b/a Ellicott Development Co. ("Ellicott Development") is a domestic corporation in the business of owning and operating private properties in New York State, including but not limited to, the Ellicott Square Building, which is located at 295 Main Street, Buffalo, New York 14203.

17.     Ellicott Development wishes to allow Handgun Carry Licensees to carry their concealed firearms at its properties, including at the Ellicott Square Building, without having to post signage or otherwise expressly give licensees permission to do so.

18.     Paladino is a shareholder and chairman of Ellicott Development.

19.     Defendant Kevin P. Bruen is the Superintendent of the New York State Police.  As Superintendent, he exercises, delegates, or supervises all the powers and duties of the New York Division of State Police, which is responsible for executing and enforcing New York's laws and regulations governing the carrying of firearms in public, including Section 5.

20.     Defendant John C. Garcia is the Sheriff of Erie County, New York.  As Erie County Sheriff, he exercises, delegates, or supervises all the powers and duties of the Erie County Sheriff's Office, which is responsible for executing and enforcing

New York's laws and regulations governing the carrying of firearms in public, including Section 5, within the territorial boundaries of Erie County.

21.     Defendant Joseph A. Gramaglia is the Commissioner of Police for the City of Buffalo, New York.   As Police Commissioner he exercises, delegates, or supervises all the powers and duties of the City of Buffalo, which is responsible for executing and enforcing New York's laws and regulations governing the carrying of firearms in public, including Section 5, within the territorial boundaries of the City of Buffalo.

## FACTUAL ALLEGATIONS

22.     New York law generally forbids any person to "possess[ ] any firearm," N.Y. Penal Law § 265.01(1), without first obtaining "a license therefor," *id*. § 265.20(a)(3). Violating this ban is a class A misdemeanor, punishable by a fine of $1,000 or less or up to a year in prison. *Id*. §§ 70.15(1), 80.05(1), 265.01. Possessing a loaded firearm without a license is a class C felony, punishable by a fine of up to $5,000 or between one- and fifteen-years imprisonment. *Id*. §§ 70.00(2)(c) & (3)(b), 80.00(1), 265.03.

23.     An ordinary member of the general public who wishes to carry a handgun outside the home for purposes of self-protection can only do so if he or she obtains a license to "have and carry [a handgun] concealed" (a "Handgun Carry License") pursuant to Section 400.00(2)(f) of New York's Penal Law.

24.     No license is available to authorize the open carrying of firearms within New York State.

25.    On July 1, 2022, New York State adopted Chapter 371 as law after the bill which became Chapter 371 passed both houses of the New York State Legislature and was signed by the Governor.

26.    Section 4 of Chapter 371 enumerates certain "sensitive location[s]" wherein the carrying of firearms is prohibited, including schools and polling places. Unless one of the limited exceptions applies (e.g. for retired police officers, security guards, etc.), an individual, including a Handgun Carry Licensee, is criminally prohibited from carrying a concealed firearm at these "sensitive locations."   A violation of section 4 of Chapter 371 is a class E felony.

27.    Section 5 of Chapter 371 provides that:

> A person is guilty of criminal possession of a weapon in a restricted location when such person possesses a firearm, rifle, or shotgun and enters into or remains on or in private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or has otherwise given express consent.

28.    A violation of Section 5 is a class E felony.

29.    Just like Section 4 of Chapter 371, Section 5 only contains limited exceptions to this prohibition against the carrying of firearms on a so-called "restricted location."

30.     None of these exceptions to Section 5 are applicable to Paladino, other than the exception that Section 5 would not apply to Paladino when he is lawfully engaged in hunting activity.

31.     Specifically, Section 5 does not include any exception for Handgun Carry Licensees.

32.     Paladino expressly brings this action to vindicate his constitutional right to carry a concealed handgun when not engaged in such hunting activities.

33.     In Section 5, New York attempts to nullify the Supreme Court's decision in *Bruen*.

34.     As a result of *Bruen*, all New Yorker's with duly issued Handgun Carry Licenses were permitted to carry their concealed handguns publicly for self-defense purposes.

35.     Section 5 acts to prohibit Handgun Carry Licensees from carrying their concealed handguns on private property for self-defense purposes.

36.     This statutory enactment creates, by state action, a requirement that a lawfully licensed individual carrying a concealed weapon must first obtain the consent of strangers as a prerequisite to exercise this constitutional right. No other constitutional right requires that such prior consent be obtained from another citizen before such constitutional right can be exercised.

37.     While Section 5's prohibition against armed self-defense on private property is not absolute, such a prohibition is the "default setting" of this law.

38.     In order for a Handgun Carry Licensee to be able to legally carry his or her concealed firearm on private property, Section 5 requires that the owner or lessee of such private property post "clear and conspicuous signage indicating that the carrying of firearms . . . on their property is permitted or otherwise give[] express consent." *See* N.Y. L 2022, ch 371, § 5(1).

39.     The operation of Section 5 thus transforms a constitutionally guaranteed right into a right that New Yorkers may only exercise after they receive express permission to do so from another.

40.     Indeed, the practical effect of Section 5 is to subject New Yorkers' Second Amendment rights to a case-by-case public referendum by property owners/lessees.

41.     Under Section 5, a property owner or lessee that does not wish to limit the right of Handgun Carry Licensees to carry a concealed firearm is compelled to expressly state so, either by posting signage or otherwise.

42.     These elements of Section 5 impermissibly treat New Yorkers' Second Amendment rights as second-class constitutional rights.

43.     It would not be constitutional for New York State to presumptively strip New Yorkers of their other constitutional rights whenever they are on private property.

44.     For example, it would not be constitutional for New York State to prohibit New Yorkers from advocating for lawful political change on private property unless the owner/lessee of such property posted signage or otherwise gave New Yorkers express permission to do so.

45.     Nor would it not be constitutional for New York State to require that a property owner/lessee post signage or otherwise expressly grant permission before New Yorkers could advocate for lawful political change on such private property.

46.     Likewise, it is not constitutional for New York State to presumptively strip New Yorkers of their right to armed self-defense on all private property in the state in the absence of such signage or express permission.

47.     Nor is it constitutional for New York State to compel private property owners/lessees to post signage or otherwise expressly grant permission before New Yorkers are allowed to exercise their Second Amendment rights on such private property.

48.     The Second Amendment forbids New York the power to decide, on a case-by-case basis, whether or not a Handgun Carry Licensee may carry a concealed weapon on private property unless such private property is a "sensitive place." *See Bruen*, Slip Opinion at p.14; *see also Heller*, 554 U. S., at 634 ("[T]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

49.     By adopting Section 5, New York has interpreted Second Amendment jurisprudence in a patently absurd manner.  Section 5 attempts to avoid the Second Amendment's prohibition against limiting Second Amendment rights on a case-by-case basis with a prohibition that universally limits Second Amendment rights unless

a property owner/lessee—on a case-by-case basis—takes specific action to restore New Yorkers' Second Amendment rights on such private property.

50. When the Supreme Court held it to be unconstitutional to limit Second Amendment rights on a case-by-case basis, it did so solely in the context of invalidating restriction on Second Amendment rights. No fair reading of *Bruen* or *Heller* would lead a court to conclude that a universal restriction on Second Amendment rights—like Section 5 purports to impose—is constitutional simply because this restriction is not imposed on a case-by-case basis, but is, instead, subject to a case-by-case exceptions.

51. Instead, Second Amendment jurisprudence requires that restrictions on New Yorkers' rights to armed self-defense be specifically enumerated, with each such enumerated restriction being traceable to historical precedent restricting this right in a similar way. *See Bruen*, Slip Opinion at p.10.

52. Moreover, isolated historical precedents cannot provide a basis for such restrictions. Instead, Second Amendment rights can only be restricted in a manner similar to historical precedents that were widely accepted in the United States at the time of the ratification of the Second and/or Fourteenth Amendment. *See Bruen*, Slip Opinion at p.57.

53. Specifically, as to where New Yorkers can exercise their Second Amendment rights, New York may only limit the right to armed self-defense in "sensitive places," such as schools and polling places. *See Bruen*, Slip Opinion at p.21.

11

54.     Knowing that a state can only limit Second Amendment rights in such "sensitive places," the New York State Legislature specifically delineated what it considers to be such "sensitive locations" in Section 4 of Chapter 371.  *See* N.Y. L 2022, ch 371, § 4 (codified at Penal L. § 265.01-e).

55.     However, in Section 5, the New York State Legislature unconstitutionally created a second category of places where Second Amendment rights are limited—a so-called "restricted location"—which Section 5 defines as all private property in the state lacking the aforementioned signage.

56.     Unless an exception applies, carrying a concealed weapon in a "sensitive location" or a "restricted location" subjects a Handgun Carry Licensee to the exact same criminal penalties, to wit: it is a class E felony, punishable by up to four years of incarceration, to violate either Section 4 or Section 5 of Chapter 371.

57.     There is no valid historical precedent for such an expansive limit on New Yorkers' right to armed self-defense, especially as Section 5 acts to limit these Second Amendment rights in locations New York implicitly acknowledges are not "sensitive places" by virtue of such locations not being enumerated in Section 4 of Chapter 371.

58.     Accordingly, Section 5 is an impermissible restriction on New Yorkers' Second Amendment rights because it restricts the right to armed self-defense in locations that both historical precedent and the New York State Legislature's own actions exclude from the definition of "sensitive places."

59.     For example, it would clearly be unconstitutional for New York to specifically limit Second Amendment rights inside a McDonalds because a fast-food restaurant is not a "sensitive place."

60.     However, Section 5 acts to limit New Yorkers' Second Amendment rights inside a McDonalds because Section 5 applies to all private property.

61.     This is not to say that a McDonalds couldn't impose some limits on exercise of constitutional rights on its own property.  Individuals exercising their right to freedom of speech can be asked to leave if they are being disruptive, for example. But the State cannot, in the first instance, presumptively ban constitutional conduct on all private property as the default position unless the private property owner or lessee posts signage allowing the exercise of that right.

62.     It is patently unconstitutional to treat Second Amendment rights in the way those rights are treated by Section 5, just as it would be patently unconstitutional to treat First Amendment rights in this way.

63.     New York cannot impose criminal penalties on Handgun Carry Licensees carrying a concealed handgun on private property without the prior permission of such property's owner/lessee with any more than it criminalize the speaking of praying on private property without such property's prior permission.

64.     Because of Section 5's restrictions, Paladino, and all other Handgun Carry Licensees, will be unable to lawfully carry a concealed handgun for the purpose of self-defense on private property without first receiving the express permission to do so from such property's owner/lessee.

13

65.     Because of Section 5's restrictions, Handgun Carry Licensees will be unable to lawfully carry a concealed handgun for the purpose of self-defense on property owned by Ellicott Development unless Ellicott Development posts signage or otherwise gives such Handgun Carry Licensees express permission to do so.

66.     Under current law, an applicant for a Handgun Carry License "must convince a 'licensing officer'—usually a judge or law enforcement officer—that, among other things, he is of good moral character, has no history of crime or mental illness, and that 'no good cause exists for the denial of the license.'" *See Bruen*, Slip Opinion at p.3 (citing N.Y. Penal Code §§400.00[1][a]–[n]).

67.     Chapter 371 further strengthens this licensing regime by, among other things, requiring Handgun Carry Licensees to complete additional training with respect to firearm safety and use.

68.     New York has thus established a licensing regime, which in the judgement of the New York State Legislature, is sufficient to ensure that Handgun Carry Licensees have the character, temperament, and training necessary to safely carry a concealed firearm without imposing a risk to public safety.

**COUNT ONE**
**42 U.S.C. § 1983 Action for Depravation of Plaintiffs' Rights**
**under U.S. CONST. amends. II and XIV**

69.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

70.     The Second Amendment's guarantee of "the right of the people to keep and bear Arms" secures to law-abiding, responsible, adult citizens the fundamental

constitutional right to bear firearms in public for the purpose of self-defense. U.S. Const. amend. II.

71.    This Second Amendment right to bear firearms in public applies to States through the Fourteenth Amendment.

72.    New York can only generally restrict this right (1) by imposing a constitutionally valid licensing regime that individuals must first pass through before they are allowed to carry a firearm in public; (2) by imposing a ban on concealed carry, but only if simultaneously allowing open carry; or (3) by limiting the carrying of a firearm in a "sensitive place."

73.    Accordingly, because New York does not allow the open carrying of handguns, Section 5 is unconstitutional to the extent it limits Handgun Carry Licensees from carrying a concealed firearm in locations that are not "sensitive places."

74.    Section 5 is unconstitutional because there are no valid historical precedents that would justify a law that prohibits the carrying, open or concealed, of all firearms, on all private property within the state, unless the owner or lessee of such property expressly allows the carrying of firearms on such property.

75.    Section 5 operates to require all Handgun Carry Licensees to get permission from strangers (i.e., the owner/lessee of every property they visit) before they are able to exercise their constitutional right to self-defense on such property.

76.    Such a regulation would be unthinkable in the context of the First Amendment.

15

77.     It would be patently unconstitutional for the State to require citizens to seek permission from the owner of each property they visit before they could legally speak or pray.

78.     So too, it is unconstitutional to treat Second Amendment rights in this way, especially after the Supreme Court declared: "The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen,* Slip Opinion at p.62.

79.     Section 5 is also unconstitutional because New York lacks any compelling state interest to prohibit Handgun Carry Licensees—who have passed its vetting regime—from carrying a concealed weapon on private property.

80.     To the extent New York has any such compelling state interest, Section 5 is unconstitutional because it is not narrowly tailored to serve these interests.

81.     Section 5 should also be found to be invalid because it does not have rational connection to New York's interest in promoting public safety.  Section 5 acts to prohibit Handgun Carry Licensees from carrying concealed firearms for self-defense, despite the fact that New York has already determined that these very same individuals do not pose a risk to public safety.

82.     If anything, Section 5 actually imperils public safety by informing would-be criminals of the locations where they are least likely to encounter armed resistance (i.e., whether or not a private property has posted the signage required under Section 5).

83.     Because Section 5 constitutes an unconstitutional restriction on the Second Amendment rights of Handgun Carry Licensees, this Court should declare Section 5 unenforceable against Handgun Carry Licensees and enjoin Defendant from enforcing Section 5 against Handgun Carry Licensees

84.     By infringing on the Second Amendment right to bear arms in public in these ways, Section 5 violates the Second Amendment—which applies to Defendants by operation of the Fourteenth Amendment—both facially and as Section 5 will be applied to Plaintiffs.

85.     Therefore, because Section 5 constitutes an unconstitutional restriction on the Second Amendment rights of Handgun Carry Licensees, this Court should declare Section 5 unenforceable against Handgun Carry Licensees, including Paladino, and enjoin Defendant from enforcing Section 5 against Handgun Carry Licensees, including Paladino.

## COUNT TWO
### 42 U.S.C. § 1983 Action for Depravation of Plaintiffs' Rights under U.S. Const. amends. I, V and XIV

86.     Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

87.     The First Amendment prohibits a government from compelling speech.

88.     The Fifth Amendment prohibits a government from specifically directing how an owner must use or modify its property.

89.     These First and Fifth Amendment rights apply against the State of New York under the Fourteenth Amendment.

90.    Plaintiff Ellicott Development does not wish to curtail New Yorkers' Second Amendment rights to bear concealed firearms in public for self-defense at one or more of its properties.

91.    Section 5 acts to compel Ellicott Development to speak before Handgun Carry Licensees are permitted to carry concealed firearms on such properties.

92.    Specifically, Section 5 acts to declare Ellicott Development's properties to be "restricted location[s]" unless and until Ellicott Development speaks to say otherwise.

93.    As such, Section 5 violates the First Amendment by compelling Ellicott Development's speech on this issue.

94.    This compelled speech bears no relation to Ellicott Development's business operations, nor does it bear any relation to any legitimate interest New York state may have in relation to the safety of its residents.

95.    In practice, Section 5 requires that Ellicott Development modify its properties to include specific signage in order for Ellicott Development to ensure that such properties are not found to be "restricted location[s]" for any Handgun Carry Licensees.  Installing such signage is the only way for Ellicott Development to ensure this given that Ellicott Development is unaware of the identity of every individual who enters its properties and whether or not such individuals are Handgun Carry Licensees.

96.     This mandated signage bears no relation to Ellicott Development's business operations, nor does such signage bear any relation to any legitimate interest New York state may have in relation to the safety of its residents.

97.     By infringing on the First and Fifth Amendments in these ways—i.e., by compelling Ellicott Development to speak and/or modify its properties with signage—Section 5 violates the First and Fifth Amendments, which apply to Defendants by operation of the Fourteenth Amendment, both facially and as Section 5 is to be applied to Plaintiffs.

98.     Therefore, this Court should (1) declare Section 5 unenforceable against Handgun Carry Licensees who carry concealed firearms on Ellicott Development's properties, notwithstanding whether or not Ellicott Development posts signage or otherwise gives express permission for Handgun Carry Licensees to carry concealed firearms on such properties; and (2) enjoin Defendants from enforcing Section 5 against Handgun Carry Licensees who carry concealed firearms on Ellicott Development's properties, notwithstanding whether or not Ellicott Development posts signage or otherwise gives express permission for Handgun Carry Licensees to carry concealed firearms on such properties.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order and judgment:

a.      Declaring that Section 5 of Chapter 371 (i.e., N.Y. Penal Law § 265.01-d), violates the Second and Fourteenth Amendments insofar as it relates to Handgun

Carry Licensees carrying concealed firearms, and is thus devoid of any legal force or effect in such a context;

       b.      Declaring that Section 5 of Chapter 371 (i.e., N.Y. Penal Law § 265.01-d), violates the First and Fourteenth Amendments insofar as Section 5 requires property owners to speak before Handgun Carry Licensees may legally carry concealed firearms on such private property, and is thus devoid of any legal force or effect in such a context;

       c.      Declaring that Section 5 of Chapter 371 (i.e., N.Y. Penal Law § 265.01-d), violates the Fifth and Fourteenth Amendments insofar as Section 5 requires property owners to post signage on their property before Handgun Carry Licensees may legally carry concealed firearms on such private property, and is thus devoid of any legal force or effect in such a context;

       d.      Enjoining Defendants and their employees and agents from enforcing or applying Section 5 of Chapter 371 (i.e., N.Y. Penal Law § 265.01-d) against Handgun Carry Licensees carrying concealed firearms;

       e.      Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

       d.      Granting such other and further relief as this Court deems just and proper.

DATED:      Buffalo, New York       LIPSITZ GREEN SCIME CAMBRIA LLP
               July 11, 2022

s/ Paul J. Cambria, Jr.
PAUL J. CAMBRIA, JR., ESQ.
Attorneys for
Office and Post Office Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3901
Phone:  (716) 849-1333
Fax:      (716) 855-1580
E-mail:  pcambria@lglaw.com